# Finfrock *v.* Northern Central Railway Company, Appellant.

*Railroad companies—Railroad police—False arrest—Wanton assault
—Respondeat superior.*

1. A railroad company is not liable in damages· for an unlawful
arrest for an offense against the laws of the commonwealth alleged to
have been committed upon or along the line of the railroad, or the
premises of the company, where such arrest was made by a policeman
appointed and commissioned upon the application of the company
under the Act of February 27, 1865, P. L.·225, where such policeman
holds no other position under the company, and where·the arrest was
not directed or instigated by any officer or employee of the company.

2. Where a railroad policeman makes an unlawful arrest while he is
at the time engaged in special service for the company, such as guarding

its property, or enforcing obedience to its rules, and it appears that the wrongful act was within the scope of such special service or employment, the fact that he also holds a commission from the state will not bar recovery from the company.

3. A railroad company may be held liable for the wrongful act of a railroad policeman, if such act is instigated by the company or by some of its officers or employees acting within the scope of their employment. Thus where a person lawfully at a station is wrongfully arrested for trespassing on a train, by a railroad policeman, he may recover damages from the company, if it appears that the arrest was made at the instigation of a baggageman who was on duty at the station at the time.

4. Where a railroad policeman after having made a wrongful arrest at the instigation of an employee of a railroad wantonly, and without excuse or provocation strikes the person arrested a heavy blow on the head, after the arrest, the company will not be liable for such act of the officer if it appears that it was not instigated by the company's employee.

Argued March 11, 1914.   Appeal, No. 21, March T., 1914, by defendant, from judgment of C. P. York Co., April T., 1913, No. 13, on verdict for plaintiff in case of Harry Finfrock v. Northern Central Railway Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.   Reversed.

Trespass to recover damages for false arrest and assault.   Before WANNER, P. J.

The circumstances of the arrest are set forth in the opinion of the Superior Court.

Defendant presented the following points:

1. Frederick E. Borman, the policeman who arrested Harry Finfrock, the plaintiff, was appointed by the governor under the Act of Assembly entitled "An Act empowering railroads to employ police force," approved February 27, 1865, P. L. 225, and by his said appointment he became a state officer with the powers of a policeman in Philadelphia, and was authorized to arrest persons guilty of criminal offenses or breaches of the peace, not only in cases where the property of the defendant company was involved, but in every case where a crime was committed or the peace broken, in counties

in which his commission was recorded. For the proper discharge of his official duties, he was responsible to the commonwealth of Pennsylvania, and not to the defendant (although he was appointed by the governor on petition of the defendant and the defendant paid his salary), and therefore the defendant is not responsible at law for an arrest made by him, unless such arrest was made by direction of some of the officers of the defendant company or one of its employees authorized to give such a direction.

The Court: This point is refused, and is not conclusive of the question of defendant's liability in this case because there is evidence that the baggage master of the company defendant ordered, and assisted in making, the arrest complained of by the plaintiff. [1]

2. In order to render the defendant responsible for the arrest of the plaintiff by policeman Borman the plaintiff must prove that the arrest was instigated by the company or some of its officers or employees authorized to direct the arrest; that the plaintiff was arrested by Officer Borman as the agent of the company and not solely of his own volition as a peace officer. If the plaintiff has failed to make such proof, he cannot recover in this action, and the verdict of the jury must be for the defendant.

The Court: This point is refused as written. The appointment of the detective at the instance of the company defendant to act as its detective on and about its premises and his employment and location at this point by the company to apprehend offenders there whenever necessary and proper to be done, was sufficient authority and direction for this particular arrest (if it was a proper occasion for an arrest) without any specific order from any officer of the road. Besides this, binding instructions cannot be given for the defendant because there is evidence that the baggage master directed and assisted in this arrest. [2]

3. Frederick E. Borman, at the time of the arrest in

controversy, was an officer of the state of Pennsylvania, appointed and commissioned by the governor, and in making an arrest he presumptively acts in pursuance of his powers and duties as such, and the fact that he was so appointed at the instance of and that his wages were paid by the railway company does not render the railway company liable for his acts as such officer.

The Court: The third point is refused, and will not be read. [3]

10. If the jury find from the evidence that plaintiff was guilty of disorderly conduct when he was arrested by Officer Borman, the defendant cannot be held liable in damages for the act of Officer Borman if he used more force than necessary in conducting the plaintiff to the county jail.

The Court: This point is refused as written.   Even if the arrest was lawful if the officer in conducting the prisoner to the jail used excessive and unnecessary force to the injury of the plaintiff, while acting within the scope of his employment as a detective of the company, the latter is liable in damages for such injury to the plaintiff, as the evidence shows that the baggage master of the company assisted in the arrest of the plaintiff. [4]

11. Under all the evidence in the case the verdict of the jury must be for the defendant.

The Court: The eleventh point is for binding instructions, which is refused. [5]

Verdict and judgment for plaintiff for $200.   Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*Richard E. Cochran*, with him *Smyser Williams* and *George Hay Kain*, for appellant.—Borman was a state officer, commissioned by the governor and possessing the powers of a policeman in the city of Philadelphia and was not responsible to the company for his act, especially

as he did not make the arrest at the instigation of any officer or agent of defendant company: Hershey v. O'Neill, 36 Fed. Repr. 168; Pennsylvania R. R. Co. v. Kelly, 177 Fed. Repr. 189.

An arrest without a warrant may be made by a peace officer for a breach of the peace committed in his presence: Com. v. Deacon, 8 S. & R. 47; McCarthy v. De Armit, 99 Pa. 63; McCullough v. Com., 67 Pa. 30; Perry v. Penna. R. R. Co., 41 Pa. Superior Ct. 591.

*James G. Glessner*, with him *McClean Stock*, for appellee.—In Pennsylvania, the rule respondeat superior has been applied to the acts of a railroad policeman, acting within the line of his duties, in the same manner as applied to other classes of servants: Berryman v. Pennsylvania Railroad Co., 228 Pa. 621; Duggan v. B. & O. R. R. Co., 159 Pa. 248; Higby v. Penna. R. R. Co., 209 Pa. 452; McFarlan v. Penna. R. R. Co., 199 Pa. 408; Hamlin v. Berks Co., 8 Pa. C. C. Rep. 462.

OPINION BY RICE, P. J., July 15, 1914:

The plaintiff testified that, while he stood on the railroad platform at the corner of the defendant's railroad shed at Duke street, in the city of York, waiting for a train to pass, two strange men came up and asked him if the train went to Harrisburg, and he replied that he did not know; that then the train moved and one of these men jumped on it, but jumped off when it stopped immediately afterward. Thereupon, he says, Bert Geiselman, the defendant's baggage master, appeared and this occurred: "'I have got you;' and I said, 'What for;' and he said, 'You were on this train;' and I said, 'No, I wasn't;' and he said, 'Never mind, I seen you jump off the train and come over here;' and by that Borman came up through the station. . . . He came up and told Geiselman he had been following us two all evening, and I says, 'No, I just came up Duke street;' and I says, 'The man you are after ran up the

track;' and he says, 'Never mind, you come along with me;' and he started to pull his handcuffs out, and I stepped back and I says, 'I wasn't on that train, I was waiting for that train to pass to go home;' and he says, 'You are going with me;' and I said, I wanted to explain things, and Geiselman grabbed me and of course put the handcuffs on." Being asked who put the handcuffs on him, he continued his testimony as follows: "Borman, the officer of the railway company; and we started to the county jail, and got about the middle of the shed, and we talked there and I wanted to explain, but he wouldn't have it that way; he says, 'Never mind, I will show you who I am;' and hit me with his mace, and I fell to my knees, and he says, 'Come along here;' and I got up and staggered, and we went to the jail," where he was locked up and detained until the following day. Upon cross-examination, he testified that Geiselman said, "I have got you for jumping this train," and that he replied: "You ain't got me. I wasn't on the train. . . . The men you want jumped off and ran up through the yard or behind that board fence I don't know which." Ashenfelter, who was arrested with the plaintiff, testified that when Borman came up Geiselman said to him, "Take these fellows," and, when Borman asked why, he answered, "Trespassing on the railroad." Geiselman was the company's night baggage agent at the station and was a commissioned railroad policeman. He testified that he was called to the scene of. the disturbance by the railroad crew, who told him there was trouble there.

The pertinency of this extended recital of the evidence adduced by the plaintiff will appear later. An equally extended recital of the evidence adduced by the defendant need not be made. It is enough for present purposes to say that it tended to sustain the defendant's contention that Borman arrested the plaintiff upon a charge of disorderly conduct committed in his presence, and in so doing was acting upon his own responsibility

and in the exercise of what he conceived to be his powers and duties as a peace officer. His commission from the governor, which was put in evidence, shows that he was appointed and commissioned "to be a policeman for Northern Central Railway Company," and was authorized to "exercise all the powers of policemen of the city of Philadelphia in the county or counties in which he is authorized to act."

1. The first question to be considered is, whether the rule respondeat superior applies and renders a railroad company liable in damages for an unlawful arrest for an offense against the laws of the commonwealth alleged to have been committed upon or along the line of the railroad or the premises of the company, which arrest was made by a policeman appointed and commissioned upon the application of the company, under the Act of February 27, 1865, P. L. 225, where such policeman holds no other position under the company, and where the arrest was not directed or instigated by any officer or employee of the company.

This question as to the defendant's liability for the arrest made by Borman fairly arose under the defendant's evidence and was presented to the court in the points which are embraced in the first three assignments of error.

There is much force in the contention that the relation of master and servant exists between such person and the railroad company, arising from the fact that he is in reality selected by the company, is compensated exclusively by the company in accordance with such agreement as may be entered into between them, and his authority to act as a policeman may be terminated by the company at its pleasure. While the act does not expressly declare that he shall be subject to the orders of the company or its officers, yet it may be said with much plausibility that the moral effect of the statutory provisions to which we have just alluded is to make him feel, at least, that he is subject to the direction and

control of the company in the exercise of the powers conferred upon him, and is responsible to it. But, on the other hand, it is to be observed (1) that he derives his appointment directly from the governor and holds a commission from him; (2) that, while the governor may not appoint others, he is not required to appoint and commission the persons designated by the company unless he deems it proper to do so, and, in determining that question, may consider not only the number but the fitness of the persons he will appoint; (3) that before entering upon the "duties of his office" the appointee is required to take and subscribe an oath to support the constitution of the commonwealth and perform the duties of his office with fidelity; (4) that the duties of his office and his powers are defined by the act, and do not expressly or necessarily include obedience to the orders of the railroad company. These considerations lead strongly to the conclusion that the policeman presumptively acts as a public officer, and not as the servant or employee of the railroad company. It is true, he may be both, as was Geiselman, and in such a case a different question may arise. But at present we are speaking of a commissioned policeman who is not, in addition, an employee or servant of the company. Confining consideration strictly to that kind of case, our conclusion is that the question above propounded must be answered in the negative. This conclusion is in accord with the great weight of authority in other jurisdictions, and there is sufficient similarity between the statutes there construed and ours to give the decisions persuasive force. Amongst these are: Healey v. Lothrop, 171 Mass. 263; Tolchester Beach Imp. Co. v. Steinmeier, 72 Md. 313, 8 L. R. A. 846; Tucker v. Erie Ry. Co., 69 N. J. Law, 19; McKain v. B. & O. R. R. Co., 65 W. Va. 233, 23 L. R. A. (N. S.) 289. The peculiar pertinency of Tucker v. Erie R. R. Co. will be shown by the following excerpt from the opinion: "It is plain, from a reading of the provisions of this statute, that

although these men were appointed on the application of the defendant company, received their compensation from it, and were subject to be divested of their powers by its act, they were nevertheless state officers, charged with the performance of public duties. They were, in law, police officers, constables, authorized to arrest persons guilty of criminal offenses or breaches of the peace, not only in cases where the property of the company was involved, but in every case where the crime was committed or the peace broken within the boundaries of any of the counties through which the company's railroad ran. For the proper discharge of their official duties, as well as for the proper exercise of their official powers, they were responsible, not to the defendant company, but to the state. . . . In order, therefore, to render the defendant company legally responsible for the unwarranted arrest made by them, and the subsequent criminal prosecution maliciously instituted by Dwyer, it was necessary to show that their action was instigated by the company, or by some of its officers or employees; that what they did was done by them as agents of the company and not solely of their own volition, as peace officers."

2. But, as shown by these and other decisions, the prima facie presumption that such officer acted solely on his own accord as a peace officer may be rebutted by evidence warranting the jury in finding that he was at the time engaged in special service for the company, such as guarding its property or enforcing obedience to its rules. If in such case it appears that the wrongful act was within the scope of such special service or employment, the fact that he also held a commission from the state will not bar recovery from the company. See McKain v. B. & O. R. R. Co., supra, and cases there cited. Higby v. Penna. R. R. Co., 209 Pa. 452, seems to belong to this class of cases; for what was said by the court as to the liability of the company for Gallagher's act, was predicated of the fact that he was "a

special police officer in the service of the railroad company." The case does not decide that every police officer appointed under the act of 1865 must by virtue of such appointment be deemed the employee, agent, or servant of the railroad company upon whose application he was appointed. And the same is true of Duggan v. B. & O. R. R. Co., 159 Pa. 248, and Berryman v. Penna. R. R. Co., 228 Pa. 621.

3. Another qualifying principle recognized by the decisions is, that the railroad company may be held liable for the wrongful act of the policeman if it was instigated by the company or by some of its officers or employees acting within the scope of their employment. Under the evidence recited at the outset of this opinion, the jury could have found that the plaintiff was lawfully on the railroad platform when the disturbance arose which culminated in his arrest, and was not and had not been a trespasser on the railroad or guilty of any disorderly conduct; that the defendant's baggage agent who was on duty at the station was called to the scene by the trainmen; that the charge was that the plaintiff had jumped on their train and was a trespasser; and that Geiselman, by his words and acts, directed and encouraged Borman to arrest the plaintiff upon that charge. These facts, considered as a connected whole, would fairly warrant a jury in concluding that the arrest was instigated by employees of the company on duty at the station, and that this was done, not in the execution of their own malicious or other private purpose, but in the exercise of the authority implied in their employment to guard their employer's property at that station against such trespassing as the plaintiff was charged with. See Act of May 24, 1878, P. L. 125, as amended by the Act of June 11, 1879, P. L. 152, and, in connection therewith, Higby v. Penna. Railroad Co., 209 Pa. 452. This, in our judgment, was the proper ground upon which, under the evidence, the case was submissible to the jury.

4. The defendant's tenth point (fourth assignment) is to be considered in the light of the plaintiff's testimony that, on the way to the jail after the arrest had been made, Borman struck him a heavy blow on the head with his mace, and this without excuse or provocation. The point was evidently intended to call for instruction that the defendant was not liable for this act if the jury accepted the defendant's contention that the officer arrested him for disorderly conduct and he was guilty of it.  We fail to see the reasonableness of the theory that would make the defendant liable for this unjustifiable and unprovoked battery.  According to the plaintiff's own account of it, it was a willful act, without other purpose than a personal and malicious one of the officer, and, therefore, as was said in the recent case of Rohrback v. Penna. R. R. Co., 244 Pa. 132, could not have been in the discharge of any duty owing to the defendant.  See, also, Berryman v. Penna. R. R. Co., supra, and Christian v. Phila. Rapid Transit Co., 244 Pa. 391.  While, as we have shown, there was evidence that the arrest was instigated by employees of the defendant, there was no evidence, direct or circumstantial, that this wanton battery was instigated or assented to by them or should reasonably have been anticipated.  To hold that the defendant is liable for an arrest which its employees instigated, is one thing, and to hold that it is liable for every wanton, malicious, or unlawful act which the officer committed afterwards, is quite another and different thing, and we are not prepared to go to the length of saying that there is liability in the latter case.  We think the answer to the point, especially when considered in connection with the instructions given in the general charge upon the same subject, was calculated to mislead.  The first four assignments of error are sustained, and the others are overruled.

The judgment is reversed and a venire facias de novo is awarded.