## Ruffner, Appellant, *v.* Jamison Coal & Coke Company.

*Assault and battery—Deputy constables—Act of May 9, 1889, P. L. 156—Coal companies—Liability for acts of deputies.*

In an action to recover damages from a coal company for batteries committed upon plaintiff's person by deputy constables appointed by the Court of Quarter Sessions upon petition of taxpayers under the authority of the Act of May 9, 1889, P. L. 156, whose compensation was paid by defendant coal company, a compulsory nonsuit was proper where there was no evidence that the acts complained of were instigated by defendant or were done in the performance of any contract of employment with defendant, but where it appeared that they were committed by the deputies, on the public highway, acting in the discharge of what they supposed to be their official duty.

Argued Oct. 2, 1914. Appeal, No. 191, Oct. T., 1914, by plaintiff, from judgment of C. P. Westmoreland Co., May T., 1912, No. 590, refusing to take off nonsuit in case of Frank W. Ruffner v. Jamison Coal & Coke Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for assault and battery. Before McCONNELL, J.

The opinion of the Supreme Court states the facts.

The trial judge entered a compulsory nonsuit which the court in banc subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the non-suit.

*Curtis H. Gregg,* with him *Jay R. Spiegel* and *Sidney J. Potts,* for appellant, cited: Re appointment of Cawley, 5 Kulp 455; Com. v. Saulsbury, 152 Pa. 554; Hirst v. Fitchburg, Etc., St. R. Co., 196 Mass. 353, 82 N. E. Repr. 10; Tex., Etc., R. Co. v. Parsons, 102 Tex. 157, 113 S. W. Repr. 914; Kusnir v. Pressed Steel Car Co., 201 Fed. Repr. 146; Southwestern Portland Cement Co. v. Reitzer, 135 S. W. Repr. 237; Gillingham v. Ohio River Railroad Co., 35 W. Va. 588, 14 S. E. 243; Illinois Steel Co. v. Novak, 184 Ill. 501, 56 N. E. Repr. 966; Sharp v. Erie Railroad Company, 184 N. Y. 100, 76 N. E. Repr. 923; McClung v. Dearborne, 134 Pa. 396; Whaley v. Citizens National Bank, 28 Pa. Superior Court, 531; Healey v. Lothrop, 171 Mass. 263, 50 N. E. Repr. 540; Texas, Etc., R. Co. v. Parsons, 102 Tex. 157, 113 S. W. Repr. 914, 132 Am. St. Rep. 857; Rucker v. Barker (Tex.), 151 S. W. Repr. 871; Deck v. Baltimore, Etc., R. Co., 100 Md. 168, 59 Atl. Repr. 650; Tyson v. Joseph H. Bauland Co., 186 N. Y. 397, 79 N. E. Repr. 3; Philadelphia, Etc., R. Co. v. Green, 110 Md. 32, 71 Atl. Repr. 986.

*Robert W. Smith,* with him *James S. Moorehead,* for appellee, cited: McCullough v. Shoneman, 105 Pa. 169; McColligan v. Penna. R. R. Co., 214 Pa. 229; Cook v. Dolan, 19 Pa. C. C. 401; Berryman v. Penna. R. R. Co., 228 Pa. 621; McFarlan v. Railroad Co., 199 Pa. 408; Rohrback v. Penna. Railroad Co., 244 Pa. 132.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1915:

The error assigned is the refusal to take off a compulsory nonsuit.

The case and the controlling views of the court below are well and fairly shown in the following excerpts from

the opinion of Judge McCONNELL: "The plaintiff's state-ment alleges: 'That prior to, at, and after, the time of the commission of the grievances hereinafter complained of, the defendant had in its employ a large force of agents and servants acting as policemen or peace officers in and about its several mines and coke plants...... That, on or about the 9th day of May, 1911, the said agents.......at said defendant's direction.......with force and arms, did......assault......the said plain-tiff,......while said plaintiff and his friends and ac-quaintances were peaceably walking upon, and using a certain public highway.'......From the fact that the persons alleged to have inflicted the injuries complained of were at the time 'acting as policemen or peace officers,' it becomes incumbent on the plaintiff to make manifest the fact that the acts of assault and battery, which are said to have injured the plaintiff, were inflicted by the persons referred to in the execution of authority derived from defendant as an employer; and that they could not be fairly imputed to a supposed exercise, or transgres-sion of authority coming from the public office which the alleged wrongdoers then held......"

"The origin of the official authority referred to in this case is shown to come from the Court of Quarter Ses-sions, by virtue of the Act of May 9, 1889, P. L. 156, en-titled: 'An act authorizing the appointment of deputy constables, vested with the power of policemen, on pe-tition of the citizens of any township, by the Court of Quarter Sessions of the counties of this Commonwealth.' The first section provides: 'That upon the petition of not less than twenty-five taxpayers......representing that the safety of the citizens and the security of property makes, in their opinion, necessary the appointment of one or more deputy constables, to act as policemen, it shall be the duty of the court to consider said petition, and, if satisfied of the reasonableness and propriety of said application to make such appointment, for such time and number as to the court may seem proper; and'

such deputy constables, so appointed, shall severally possess and exercise all the powers of policemen of cities of this Commonwealth......' From this, we see that the initiative of the appointment is not with a single coal company, but is with the taxpayers—not one or two simply, but at least twenty-five must petition. The reasonableness and propriety of the application is then to be passed on by the court......The duration of the appointment, and the number of persons to be appointed, rest entirely with the court, and not with any one or more individuals. The duties to be performed are not to be prescribed by individuals, but the law declares they are the duties of police officers in cities, and the custody of persons arrested by such police for the commission of any offense against the laws of the Commonwealth is provided for. By a subsequent section, such deputy constables or police officers 'may be discharged whenever the court appointing them shall be satisfied that their services are no longer required.' No attempt was made to show that defendant was even a petitioner for the appointment of these deputies......The defendant did not appoint the policemen, could not determine the period of their service—could not prescribe their duties, and could not discharge them. The doing of the act complained about was coincident with the prescribed term of the officers' service. The public exigency to be judged of by the court making the appointment, could alone prompt that court to make the appointment, and the passing of that exigency, to be judged of only by the court, would also warrant the court to discontinue the appointment. Only public duties were to be performed. Of one appointed under this act, Chief Justice Paxson, in Commonwealth v. Saulsbury, 152 Pa. 554, 559, said: 'He was merely a policeman of the township of Manor exercising all the powers of a policeman in cities of this Commonwealth.'......"

"The testimony of G. U. Shaw, relied on to show that the deputies were not such officers, but were the mere

servants of the defendant, does not sustain that contention, but is to the effect that what was done was done in their capacity as officers, and not otherwise......Of course, the defendant company would be interested in the movements of the officers, and the superintendent of the company would frequently talk to Shaw and to the other officers, about conditions in the trouble zone— but, according to Shaw, no attempt was made by the superintendent to control the officers in the discharge of what they conceived to be official duties......The 'deputies'......were not performing services or supposed services on the private property of the defendant, but on the public highway, where the authority of policemen is usually exercised, and where private interests yield the fullest submission to public control. It may be that they mistakenly believed they as policemen were required to prevent marches of a kind forbidden by some injunction—not put in evidence—or it may be that they thought—(mistakenly also)—that, in the interest of peace and good order, they as policemen should warn persons about to conduct marches......and apprise them of the terms of the injunction, in order that it be not violated. Their mistaken ideas about what they should do in furtherance of supposed official obligations would not make their acts to be acts of (private) servants ......Their acts are not to be considered the acts of officers as long as they keep within the law, and become the acts of (private) servants whenever they transcend those limits. The acts done are referable to one of these relations—and not to the other—and undoubtedly, taking all the evidence just as it was given, they supposed (in apprising marchers of the injunction) they were at the time exercising official functions. That being the case, their conduct (in that respect) is to be measured by the standards of official duty......; there exists no occasion or warrant for deducing from the facts the implication of a contract (of private employment)—es-

pecially when to do so is to negative the official capacity
so clearly and circumstantially proven......"

"The reason for defendant's paying......or rather
the reason why the township does not pay for the serv-
ices of these policemen, is apparent from the Act of As-
sembly under which the appointment was made: Al-
though the act provides that 'the said deputy constables
shall be paid such compensation as may be approved by
the Court of Quarter Sessions,' yet, it does not prescribe
who is to pay the approved compensation, and the lower
courts have held that unless the act prescribes that the
township shall pay—it cannot be compelled to pay;
therefore, pay must be looked for elsewhere. In the case
of Com. v. Saulsbury, 152 Pa. 554, the court, at the time
of making the appointment, had prescribed that compen-
sation should be raised by subscription, and it was not
thought that that fact left the appointee anything else
than what he had been appointed to be, viz: a police of-
ficer. So in this case, the defendant's paying the compen-
sation, presumably, by (reason of the) order of court,
does not convert a public policeman into a private serv-
ant of him who pays. [Upon this general point, see
Healy v. Lothrop, 171 Mass. 263, 50 N. E. Repr. 540
(Mass., HOLMES, J.); Hershey v. O'Neil, 36 Fed. Repr.
168; Wells v. Washington Market Co., 19 D. C. 385;
Hardy v. Chicago, 58 Ill. App. 278.]"

In substance, the foregoing presents a correct view
of all the material matters before us for consideration;
and we are not convinced of reversible error in the dis-
position made of the case by the learned court below.
Of course, one in the position of a public police officer
might at the same time act as a private servant, and if
a wrong be committed while acting in the latter capacity
the principle of respondeat superior applies; further,
when there is a fair dispute on the facts, the question
of the exact capacity occupied by the offender, at the
time of the injury, is for the jury. But, after going over
the proofs and considering all the authorities cited, we

cannot say the trial judge erred in holding the evidence at bar insufficient in law to sustain a finding that the deputy constables in the present case were acting as the private servants of the defendant company at the time of the alleged torts here complained of. (As to the characteristics of the relation of master and servant, see McColligan v. Pa. R. R. Co., 214 Pa. 229.)

The assignment of error is overruled and the judgment is affirmed.