## Kirkpatrick, Appellant, *v.* Alan Wood Steel Company.

Argued January 15, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*J. Russell Gibbons,* with him *Leonard A. Talone,* for appellant.

*Victor J. Roberts,* with him *Aaron S. Swartz, Jr.,* and *High, Dettra & Swartz,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, March 25, 1940:

. Plaintiff is a police officer of the Borough of Conshohocken. He was shot and injured by John Lenzi, a duly elected constable of the adjoining Township of Plymouth. This suit was brought to recover damages from defendant, Alan Wood Steel Company, upon the theory that Lenzi at the time of the shooting was an employee of the Steel Company for whose act it is responsible under the doctrine of respondeat superior. The trial judge entered a compulsory nonsuit, which the court declined to remove and we have this appeal by plaintiff.

Broadly speaking, a citizen is not responsible in damages for the tortious act of a peace officer who is engaged at the citizen's behest in the performance of service for the public. See *Ruffner v. Jamison Coal & Coke Co.,* 247 Pa. 34, 92 A. 1075; *Fagan v. Pittsburgh Terminal Coal Corp.,* 299 Pa. 109, 149 A. 159. It would take most extraordinary circumstances to mulct the citizen in damages for the tort of a police officer summoned to the discharge of public duty by the citizen.

A fire had taken place in a barn belonging to defendant situate in Plymouth Township, not far from Conshohocken. A robbery had been perpetrated in that borough and the robber had been fired at by a policeman. Investigation by police at the barn disclosed some clothing and rags supposed to be blood stained. On the night of November 16, 1938, the chief of police of Conshohocken, other police, including plaintiff, a county detective

and Lenzi, the constable, apparently summoned by the sergeant of defendant's private police, who had been appointed by the court, with the powers of a police officer, visited the barn about midnight to make an investigation. It was testified that they were in search of a "trespasser" but it is obvious from the evidence that they were conducting a general police inspection. They were under the direction of the chief of police of the borough. After the inspection was completed, it was arranged that the sergeant of defendant's police and the constable should remain at the barn to watch for intruders and that the police officers should return at 3:30 in the morning to see what had developed. It was the understanding that the two selected to remain should stay outside the barn. All of the men, including the constable, were in uniform. At the hour arranged, plaintiff and another police officer returned to the barn and ascended the stairs to the second floor. Upon arriving there, the constable, who with the sergeant was on the second floor in hiding, for some unexplained reason, fired the shotgun which was in his hands and inflicted injuries on plaintiff.

It was shown that the constable at times had been employed by defendant as an electrical helper and at other times had directed traffic in the road in front of defendant's entrance gate, whether by its direction does not appear. But whatever he may have done in its behalf or howsoever employed by it at other times, it is clear that on the night in question he was acting as constable—as peace officer—in the discharge of his public service and duty and that defendant is not responsible for his act.

Other questions raised do not merit discussion in view of our determination on the controlling one.

Judgment affirmed.