## Kiley, Appellant, *v.* Dilworth.

*Master and servant—Arrest by servant—Care of property—Liability of master—Malicious prosecution.*

The duty of an employee requires him to protect the principal's property under his care. If it is in danger, and he causes the arrest of one who is committing the wrong, the principal will be responsible for the agent's act if it is illegal; but this rule does not obtain where one is arrested for a crime already committed, or where the offense does not endanger the master's property which is under the care of the servant.

Argued May 15, 1913. Appeals, Nos. 205 and 206, April T., 1913, by plaintiffs, from judgment of C. P. Allegheny Co., May T., 1905, Nos. 667 and 669, for defendant non obstante veredicto in cases of William J. Kiley and Andrew W. Bell v. Dilworth Brothers Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass for false arrest.

On a rule for judgment n. o. v. SWEARINGEN, P. J., stated the facts to be as follows:

The plaintiff and William J. Kiley were arrested on June 10, 1905, and detained for about half an hour. No charge was ever formally preferred against them. Each of them brought an action against the arresting officer and T. P. Walsh, an employee of Dilworth Brothers Company, and at the same time each brought an action

against Dilworth Brothers Company, the defendant. The four actions were tried at the same time, before the same jury. Verdicts were found in favor of the plaintiff in each case. A motion for judgment non obstante veredicto was then made by Dilworth Brothers Company in each of the cases, in which it was the defendant, and the same were argued.

Dilworth Brothers Company was a corporation engaged in the wholesale grocery business, including tobacco and cigars; L. Goldsmit and Brothers were engaged in the whole tobacco business. Both concerns were located in Pittsburg, within a short distance of each other, in June, 1905. The said Thomas P. Walsh was a buyer for Dilworth Brothers Company, and one J. B. Collins was manager of the tobacco department. Neither of them was an officer or director of the corporation. On June 10, 1905, Julius Zeigel, a messenger boy of the Red Star Line Messenger Service, presented at Goldsmit's place of business an order for the delivery of some tobacco and cigars, which bore the signature of Dilworth Brothers Company. The signature was not genuine and the order had not been issued by the corporation. The clerk in Goldsmit's store, suspecting the genuineness of the order, telephoned Dilworth Brothers Company that the boy had presented the order. The said Collins replied that no such order had been issued, and requested that the boy be held until he could interview him, which was done. Collins then went over to Goldsmit's store. A few minutes afterwards Thomas P. Walsh aforesaid started for the store to aid in the investigation. They testified that the boy said that he had obtained the order from two men in a back street near by. The boy testified that he said he had obtained the order from but one man. While the interview was in progress, the plaintiff and Mr. Kiley passed down the street engaged in their own affairs. They were both reputable business men. Collins and Walsh testified that they understood the boy to designate the plaintiff

and Kiley as the men from whom he obtained the order, and they followed. At the corner of Market street, Collins requested officer Bromley to arrest the plaintiff and Kiley, which he refused to do, and they passed on down further. Collins returned to Goldsmit's store, where the boy was still being held. A little later Walsh requested the same officer to make the arrest. The latter accosted the plaintiff and Kiley, who were again passing. They denied all knowledge of the alleged order and produced evidence of their identity. But the officer required them to accompany him to Goldsmit's store. Quite a crowd collected and followed. As soon as they arrived at the store, the boy promptly stated that the plaintiff and Kiley were not the proper parties and they were dismissed. It was not pretended that any warrant had been issued, and no information had been made.

*Error assigned* was in entering judgment for defendant n. o. v.

*F. C. McGirr,* of *Marron & McGirr,* for appellant.— The arrest was to protect the defendant's business, and in pursuance of an authority given to the employees who caused it: Smith v. Munch, 65 Minn. 256; Cobb v. Simon, 119 Wis. 597; Staples v. Schmid, 18 R. I. 224; Hamel v. Brooklyn & N. Y. Ferry Co., 6 N. Y. Supp. 102; Kolzem v. R. R. Co., 20 N. Y. Supp. 700; Craven v. Bloomingdale, 54 N. Y. App. Div. 266; Mallach v. Ridley, 24 Abb. N. C. 172; Eichengreen v. R. R. Co., 96 Tenn. 229; Jackson v. Telegraph Co., 139 N. C. 347; Harris v. R. R. Co., 35 Fed. Rep. 116; Kastner v. Ry. Co., 76 N. Y. App. Div. 323; Dickson v. Walron, 135 Ind. 507; Palmeri v. R. R. Co., 133 N. Y. 261; Smith v. Webster, 23 Mich. 297; Wheeler & Wilson Mfg. Co. v. Boyce, 36 Kan. 350; McClung v. Dearborn, 134 Pa. 396.

*S. Leo Ruslander,* with him *A. Leo Weil* and *Charles M. Thorp,* for appellee, cited: Markley v. Snow, 207 Pa.

447; Canon v. Ry. Co., 216 Pa. 408; Mulligan v. R. R. Co., 129 N. Y. 506; Cent. R. R. Co. v. Brewer, 27 L. R. A. 63; Allen v. Ry. Co., L. R. 6 Q. B. 65; Edwards v. London, etc., Ry. Co., L. R. 5 C. P. 445.

OPINION BY HENDERSON, J., October 13, 1913:

The defendant could only be made liable for the unlawful act of its employee when such act was expressly authorized or was ratified by the defendant or was done by the authority implied in the duties and powers of the employment. The general rule is that the employer is responsible for all acts done by the employee in accordance with the express direction of the employer and also for all acts done in the management of the employer's business within the scope of the employment, but when the act was not expressly authorized or was outside of the implied authority the latter is alone responsible if the thing done be unlawful. Authority has been implied in numerous cases, but these all arose out of efforts of the servant to protect or recover property of the employer or to protect the employer's servants or business. Krulevitz v. Eastern R. R. Co., 140 Mass. 573; Staples v. Schmid, 18 R. I. 224; Smith v. Munch, 65 Minn. 256; Eichengreen v. R. R. Co., 96 Tenn. 229; Lynch v. R. R. Co., 90 N. Y. 77; Smith v. Webster, 23 Mich. 297, are cases of the class referred to, but none of these went so far as to hold that an employer was liable for the act of a servant in causing an arrest not involving the loss or recovery of property or the protection of the employees or property of the master. In Allen v. Ry. Co., L. R. 6 Q. B. 65, a clerk caused the arrest of a person who had apparently attempted to rob a cash drawer. The attempt was not successful and had ceased at the time of the arrest. It was held that such an arrest was not within the scope of the clerk's employment; that its only object could be the punishment of the offender—not the protection of the property, and that the company by which the clerk was employed was not liable for the unauthorized

act. A rule somewhat more limited was adopted in Edwards v. Ry. Co., L. R. 5 C. P. 445, to the effect that when a servant not specially appointed to protect property arrests a person whom he supposes to have stolen his master's goods the servant should be presumed to have acted in pursuance of his duty as a good citizen and not within the scope of his employment as a servant. Carter v. Howe Machine Co., 51 Md. 290; Mulligan v. R. R. Co., 129 N. Y. 506, and Cen. R. R. Co. v. Brewer, 78 Md. 394, are in accord with the principle stated. In Markley v. Snow, 207 Pa. 447, the authorities are reviewed by the present Chief Justice and the principle stated that an employer may be held liable for the act of his servant in instituting a malicious prosecution but that the act of the agent becomes that of the principal only when expressly authorized or when his authority to act may fairly be inferred from the nature and scope of the employment. Generally the duty of superintendence does not carry with it the duty to arrest or prosecute. The inference of authority to do either does not arise from the mere fact of the agency. If the arrest is made by the agent in the absence of the principal for the protection of property that is in danger, and in some cases where the arrest was to recover the property, or when the crime was at the time being perpetrated, authority may be implied, but where the act is done for the punishment of the supposed criminal or the vindication of the law it is the act of the servant and not of the employer. It is true that the prosecution out of which that case arose was commenced about three months after the alleged crime, but we do not understand that this was a controlling consideration in the determination of the case. The decision was that the employment of the servant was not of such a character as to create an implication of authority to institute criminal prosecutions for past offenses not connected with the protection of the property or the servants of the principal or the conduct of

its business. Canon v. Railway Co., 216 Pa. 408, is of
like effect. Complaint for embezzlement and larceny
was made by the general superintendent of the company
against a conductor and the action was brought against
the company. A nonsuit was granted by the court
below on the ground that the prosecution of the com-
pany's servant was not within the scope of the employ-
ment of the superintendent and that as the act was not
authorized or ratified the action could not be maintained.
This conclusion was sustained on appeal where it was
held that it was not within the implied power of the
superintendent to prosecute in the name of the com-
pany. The doing of such an act was not in the exercise
of the ordinary duties of an agent intrusted with the
custody of the company's money or goods, and the
corporation could only be held liable for such an act
when precedent express authority was shown or that there
had been a ratification of the act of the superintend-
ent. The principle announced in these cases we think
justified the learned trial judge in entering the judgment
appealed from. A careful examination of the evidence
does not disclose any facts from which it should be
inferred that either Walsh or Collins was acting under
the implied authority of his employment in causing
the arrest of the plaintiff. The defendant had lost no
property nor was it in danger of such a loss. The order
presented to Goldsmit Brothers neither caused a loss
to that firm nor to the defendant. The attempted
fraud was promptly detected by Goldsmit Brothers, and
whatever offense was committed by the maker of the
order was a past transaction when Walsh and Collins
came onto the scene. There had been a discussion to
some extent between some of the defendant's employees
and representatives of other wholesale tobacco dealers
with reference to forged orders for tobacco, and there
was apparently an understanding that they would be
on the lookout for any persons attempting to use such
orders, but there is nothing in the testimony which

shows that the defendant company participated in such discussion or that there was any understanding amounting to an agreement to which it was a party to make arrests or institute prosecutions. We are of the opinion that the case does not disclose such a state of facts as would justify an inference of authority from the defendant to make the arrest of which the plaintiff complains.

The judgment is affirmed.