# Keidel v. Baltimore & Ohio Railroad Co., Appellant.

*Appeals—Evidence—Inferences—Binding instructions — Practice, C. P.*

1. In determining whether or not one of the parties to a litigation is or was entitled to binding instructions in his favor, all the evidence and inferences therefrom favorable to the other must be taken as true, and all unfavorable, if depending solely on testimony, must be rejected.

*Principal and agent—Master and servant—Course of employment —Wrongful arrest—Detective—Burden of proof—Evidence.*

2. The acts of a servant or agent are within the course of his employment if they are expressly authorized by the principal, or are actually or apparently performed under general authority given to the servant or agent, or are within the scope of the employment as recognized either expressly or by general usage and consent.

3. Where the unauthorized act of an agent or servant is performed with the knowledge and apparent approval of those authorized to represent the principal, the latter will be bound thereby.

4. Where the circumstances justify it, a principal may be held liable for a wrongful arrest and imprisonment made by his agent, even though the principal gave no direct authority to make the arrest.

5. Where an agent has general authority to act for his principal in the capacity of a detective officer and as far as the duties of a police officer go, it is for the jury to say whether or not this general authority is sufficient to bind the principal for the acts of his agent in making or causing to be made a wrongful arrest and imprisonment.

6. In actions for unlawful arrest and false imprisonment, the burden of proof of probable cause and absence of malice is upon the defendant; hence, where all the evidence regarding these matters is oral, the question as to whether or not the arrest and imprisonment were justifiable is necessarily for the jury's consideration.

*Appeals—Point not based on evidence—Affirmance—Reversal.*

7. Where the court below submits a case to a jury on a point as to which there is no evidence, an appellate court will be compelled to reverse, unless it is reasonably certain the verdict would

have been the same if the mistake had not been made; a substantial doubt on the point necessitates a reversal.

Argued September 29, 1924.   Appeal, No. 55, Oct. T., 1924, by defendant, from judgment of C. P. Somerset Co., Feb. T., 1923, No. 213, on verdict for plaintiff in case of Henry L. Keidel v. Baltimore & Ohio Railroad Co.   Before 'MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Reversed.

Trespass for alleged unlawful arrest and false imprisonment.   Before BERKEY, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,000.   Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record, and refusal of motion for judgment n. o. v., quoting bill of exceptions.

*J. G. Ogle,* with him *J. B. Landis,* for appellant.— Under all the evidence in this case, the act of Robert C. Bledsoe, in making the arrest of the plaintiff at the time and manner in which he did, can in no way be said to be the act and deed of the Baltimore & Ohio R. R.: Markley v. Snow, 207 Pa. 447; Finfrock v. R. R., 58 Pa. Superior Ct. 52.

There was sufficient probable cause: Taylor v. Shipbuilding Corp., 275 Pa. 229; Robitzek v. Daum, 220 Pa. 64; Roessing v. Rys., 226 Pa. 523; McCarthy v. De Armit, 99 Pa. 71; McAleer v. Good, 216 Pa. 473; Burford v. Richards, 58 Pa. Superior Ct. 12.

*J. C. Lowry,* for appellee.—A master is liable for the tortious acts of his servant when in the course of his employment, although they may be done in disobedience of the master's orders: P. & R. R. R. v. Derby, 55 U. S.

468; McMahan v. White, 30 Pa. Superior Ct. 169; Duggan v. R. R., 159 Pa. 248.

In an action for unlawful arrest and false imprisonment, the burden is on defendant to show that it was by authority of law: McAleer v. Good, 216 Pa. 473.

Arrest without just cause, a wrongful or unlawful arrest, or an abuse of a lawful arrest, stand upon the same footing as regards duress: Owens v. Schmidt, 14 Phila. 183; Hazard v. Israel, 1 Binn. 240.

OPINION BY MR. JUSTICE SIMPSON, November 24, 1924:

Defendant appeals from the judgment entered on a verdict recovered in an action for unlawful arrest and false imprisonment. Its principal complaint is that binding instructions should have been given in its favor, because it did not authorize the arrest or imprisonment of plaintiff. In considering this point, "all the evidence and inferences therefrom favorable to plaintiff must be taken as true, and all unfavorable to him, if depending solely on testimony, must be rejected": Wiles v. Emerson-Brantingham Co., 267 Pa. 47; Keck v. Pittsburgh, etc., Ry. Co., 271 Pa. 479. Thus viewed, the following is disclosed:

Plaintiff had been "a faithful and efficient employee" of the defendant railroad company for more than twelve years; during the latter part of that time being section foreman on its Connellsville Division. The superintendent in charge of that division received an unsigned letter (which named in the body of it, as its authors, two dismissed employees of the company), charging plaintiff with padding the payrolls of the company for his own benefit, and with having "company material around his place." The superintendent sent the letter to the accountant of the division for investigation, and instructed the company's captain of police to work in connection with the accountant in inquiring into the allegations made in the letter. What they did was to

take, in the absence of plaintiff, the unsworn statements of its alleged writers. They both denied having had any connection with the writing of the letter, and their only averments in any way affecting plaintiff, were that he once allowed one of the employees to substitute his brother for a period of three or four days, while the employee was absent, and that certain other employees received more pay for the same time than did others. The former was not an unusual occurrence where, as at the time specified, the section foreman was short-handed; the latter was not shown to be improper. It was also stated that the person who probably wrote the letter had been repulsed by plaintiff when trying to get paid for time during which he, the supposed writer, had not been working. The statements thus taken were given to the superintendent, who referred the matter to the police captain for further investigation, and the latter, with the supervisor of the division and two other men, went to plaintiff's house and told him they had a search warrant and intended to search the house. They had such a warrant, but refused to show it when requested so to do, possibly because it did not authorize the search in the county where they then were. Nothing was said about there being any warrant for plaintiff's arrest, although the searching party had one issued, upon an affidavit of the police captain charging plaintiff with conspiracy, and he was thereupon taken into custody.

When the search was concluded the police captain said nothing belonging to defendant had been found. The only things which it was later averred plaintiff should not have had at his home, were a number of the blank forms upon which he made his reports to defendant, and a "timer" intended to be subsequently attached to a gasoline track-car used by him in the performance of his duties. The combined value of all these things was trivial. The timer still had fastened on it the tag show-

ing it had been sent to plaintiff at his home station, and the supervisor then said to the others present: "That is all right. I had that timer sent to him; they can't say anything about that." The only objections then or thereafter made to plaintiff's possession of these articles, which were taken by the searching party, was that he had more than the usual quantity of stationery, and that, until actually being attached to the car, the timer should have been kept in a tool house five miles away. He had, however, been told to put up a shanty near his residence, to contain the things required in work being done at that end of the division, and, for convenience of reporting, the forms were kept by him and the other section foremen at or near their homes. Neither then, nor at any later period, was it shown that plaintiff was guilty of conspiracy, or that he had taken or wrongfully used any of defendant's property.

From his home in Somerset County, plaintiff was compelled by the company's officials to go to Bidwell, in Fayette County, where ten picks had been sent by him to be sharpened. The only allegation made as to them was that too much time was allowed for sharpening them, and that this work should have been done in the company's shops elsewhere. The place of sharpening them was a more convenient one, however, and, for that reason, plaintiff and other section foremen frequently sent the picks there. Plaintiff was taken thence to Connellsville, in Fayette County, where an informal investigation was made by his custodians and the division accountant. Nothing beyond what has already been stated was developed, but the police captain, with the knowledge of the others, nevertheless locked plaintiff up in the Connellsville jail, and he was kept there until the next afternoon, when he was discharged from custody. He was then taken by the police captain, without any warrant, before a justice of the peace in his home County of Somerset, a hearing was had and he was again discharged from custody.

From the foregoing facts (which, as stated, must, for present purposes, be accepted as true), it is clear that some one was responsible for plaintiff's wrongful arrest and imprisonment, and the only open question on this point is: Was the jury justified in finding that defendant was liable for it? While no direct authority was shown to have been given by it to the police captain to make this particular arrest, it is clear that a grant of authority can be implied where the circumstances justify it, and that this was a question for the jury in the instant case. When the division accountant made his report to defendant's superintendent, there was not, so far as appears, the slightest reason for giving any further credence to the anonymous letter; yet the matter was referred to the police captain, a paid officer of defendant, for further investigation. Why to him alone? He admitted that he had "general authority to act for the B. & O. [defendant] in the capacity of detective officer and as far as the duties of police officer go." As such, defendant knew he had power to arrest or have arrested any supposed criminal, and that his duty to defendant required him, under the "general authority" mentioned, to exercise it if he believed the railroad had been wronged. It put its whole case in his hands, and made no attempt to control the "general authority" given to him, nor to state what he should do in the course of the proposed "further investigation." Indeed it does not deny, in its somewhat elaborate affidavit of defense, the averment of the statement of claim that the police captain was "acting in the line of his employment" for defendant, but in answer thereto alleges only that the arrest was made without malice and with probable cause.

Moreover, all the subsequent proceedings were conducted with the knowledge and in the presence of other officials, who were in charge of this division of defendant's road. They did not object to what was done, although it was clear that no "conspiracy" was shown; on the contrary, they assisted in the commission

of the wrong. This made them and their principal liable: McAleer v. Good, 216 Pa. 473. The supervisor of the division, when plaintiff was brought before him, after arrest but before incarceration, with knowledge of the facts, took the blank reports and timer, discharged plaintiff from his employment with the railroad, and permitted the police captain to wrongfully commit plaintiff to jail. Defendant admits, in its brief, that ratification and approval of the act of the police captain would operate to hold it liable. The facts last stated, upon which this conclusion could properly have been reached, were proved by defendant itself. Perhaps we should add that we are not now concerned with the matter of probable cause; upon ample evidence, and under adequate instructions, the jury decided none existed. Indeed, on this phase of the case, the burden of proof was on defendant (McAleer v. Good, supra), and the oral evidence alleged to establish probable cause was necessarily for the jury's consideration.

The question of possible liability being one for the jury, the next matter to be decided is, Was it properly submitted to them? In one of its points, defendant asked the trial judge to say that the action of its police captain "was not in the line of the performance of any duty he owed [defendant] . . . . . ., and the defendant company is not liable in damages therefor." This point should have been refused, since it sought to take the case from the jury; but instead of being so treated, it was answered by saying that "the point as stated is correct as to his duties, but nevertheless if you find as a fact, from a preponderance of the evidence in the case, that the officer arrested and confined the plaintiff in the city jail of Connellsville in the course of his employment by the Baltimore & Ohio Railroad Company, the said company is liable for such acts by its officers." What was meant by "the course of his employment" was not there stated, but in a previous part of the charge (which the trial judge told the jury it should "bear in mind as I

further proceed with the charge"), he paraphrased the definition given by us in Duggan v. B. & O. R. R., 159 Pa. 248, as follows: "By the term, the course of employment of a servant or agent, is meant those matters or things the employer has authorized his servant to perform, or if R. E. Bledsoe [its police captain] had the general authority, actual or apparent, to act for the Baltimore & Ohio Railroad Company in the capacity of detective officer, and such authority included, expressly or by general usage and consent, the power to make an arrest in the company's behalf, such arrest or false imprisonment was in the course of his employment." The police captain, as already pointed out, testified to his "general authority to act" for defendant, which was sufficient justification for submitting the question of express authority to the jury, although he also said that, in the arrest of plaintiff, he had acted on his "own authority as police officer." There was, however, no evidence of a "general usage," showing that police captain, or any other like employee of defendant, had made arrests, which were consented to or acquiesced in by it, or even that he had made any other arrest at any time or under any circumstance. It was error, therefore, to tell the jury they could find authority in the police captain because of "general usage"; and hence, although we gravely doubt whether the verdict would have been different if the mistake had not been made, we must hold the charge may have been injurious to defendant in the particular stated, since we cannot say, with certainty, that it was not (Carr v. Fagan, 278 Pa. 587), and cannot know but that, except for this error, the jury might have believed defendant's testimony as to what had occurred, rather than plaintiff's, as above detailed.

The other assignments of error need not be discussed; they disclose nothing of importance.

The judgment of the court below is reversed and a venire facias de novo is awarded.