Fagan *v.* Pittsburgh Terminal Coal Corporation,
Appellant.

Argued October 8, 1929.   Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*William A. Challener,* with him *William A. Challener, Jr.,* for appellant.—Appellant's contention is that the coal and iron police who arrested plaintiff were, in making that arrest, acting in pursuance of the powers given them by the Acts of 1865, P. L. 225, and the Act of April 11, 1866, P. L. 99, and that the relation of master and servant did not exist between the police officers and defendant company.

The presumption of law is that such an officer in making an arrest, as well as his subsequent conduct in relation thereto, is not acting on behalf of defendant company, but as a public police officer: Bunting v. R. R., 284 Pa. 117; Ruffner v. Coal Co., 247 Pa. 34; Riddle v. Transit Co., 80 Pa. Superior Ct. 176; Naugle v. R. R., 83 Pa. Superior Ct. 528; Keidel v. R. R., 281 Pa. 289.

Even if there had been evidence that these officers were engaged in a special service, it would still have been necessary to show "that the wrongful act was within the scope of such special service or employment."

*O. K. Eaton,* with him *W. H. Coleman,* for appellee.— The company was liable: Kiley v. Dilworth, 55 Pa. Superior Ct. 329; Finfrock v. Ry., 58 Pa. Superior Ct. 52.

OPINION BY MR. JUSTICE SADLER, January 27, 1930:

Defendant has appealed from a judgment entered on a verdict for plaintiff in an action of trespass for false arrest. The assignments, necessary to be considered, complain of the refusal to give binding instructions for the defendant and the failure to enter judgment n. o. v.

The evidence, viewed in the light most favorable to the plaintiff, as it must be on this appeal, establishes the following facts: A strike was in progress at the Coverdale mine of the Pittsburgh Terminal Coal Company,

defendant. To secure employees, those willing to work were collected at the Wabash Building in the City of Pittsburgh, where the company maintained its offices, and from that point transported over public highways to the colliery, some 12 miles distant. On June 1, 1927, a truck was provided for this purpose and several persons who had accepted employment were seated therein. Shanor and Parker, two coal and iron policemen, duly commissioned by the governor, had, in the early morning, brought a prisoner to Pittsburgh and intended to return in the same vehicle used for the transfer of the new workers. They had come to the side of the motor, which was standing on a public street, with this purpose in view. In the meantime, the plaintiff, Fagan, an officer of the Mine Workers Union, approached, and when a few feet distant called upon those already in the automobile to leave, pointing out the grave dangers which threatened them if they accepted service as strike breakers. When remonstrated with, he abused the officers in a loud and boisterous manner, calling them gunmen and other opprobrious names. He was asked again to move on, but refused, and continued in an excited way to insult the bystanders. Though he testified his conduct was not improper, and that he failed to notice a crowd gather, his evidence as to this was negative in character, and it was affirmatively shown that a considerable number of persons were attracted by his unseemly behavior and collected on the highway.

The result was his arrest for disorderly conduct by the two officers, who took him into the Wabash Building, in front of which the offense occurred. As he resisted arrest, they were aided by a third commissioned coal and iron policeman named Thuransky, who was also interested in the loading of men engaged as workers. The latter officer spoke several languages and was used to communicate with the foreigners who had accepted employment, but he had never, so far as the record shows, arrested any one, or been given authority or direction

by the company to do so. His participation was solely to aid Parker and Shanor to overcome the physical resistance of Fagan after he had been apprehended, and ceased when the latter had reached the lobby of the adjoining building. One other employee, the driver of the truck, was also a coal and iron policeman, but had nothing to do with the arrest complained of. Osborne, an engineer of defendant, also came from the company's offices while the arrest was taking place, but was upon the scene for only a moment, and had no part in making it, nor did he give any instructions or direction as to the acts of the commissioned policemen.

The defendant was taken to the office of one Freeman, who had charge of the coal and iron police, on the eighth floor of the Wabash Building, and held there until communication could be had with counsel for the company. Baker, the president of the corporation, could not be found, but within a short time the attorney was reached by telephone, and he immediately responded to the call in person. Fagan was then put in touch with his own office, and through it with his counsel. From the time of the arrest until the unopposed departure of Fagan, after counsel for both had been consulted, not more than one hour had elapsed. The plaintiff testified that during this interval he was sneered at or insulted by the employees of the coal company. As to this, the court below, in its opinion, said: "He was not humiliated by incarceration in a prison. There was some testimony that he was deliberately humiliated in the defendant's offices, but we are not impressed by that testimony. We are satisfied that he was treated with respect. He was held there for one hour, then released on his own recognizance, appeared before a magistrate and was fined."

The arrest having been made without a warrant, the officers desired a prompt hearing, but, after consultation with counsel for both parties, it was suggested that a formal information be made before a magistrate named, and the evidence, in support of the offense charged, heard

later on the same day. Fagan was found guilty of disorderly conduct on a public highway and fined. A writ of certiorari was issued by the county court and the judgment reversed because of technical objections to the record prepared by the justice, the merits of the complaint not being considered. This action of trespass was then brought against the coal company for damages for the alleged false arrest, and a verdict rendered in his favor. The amount thereof was reduced as excessive, and judgment finally entered for $3,000, from which this appeal was taken.

The defense was based on the fact that the acts complained of were not directed by any manager or employee of the defendant but were committed by officers of the Commonwealth. Shanor and Parker, as well as Thuransky, who furnished some assistance when Fagan resisted detention by the first two named, were all appointed under the provisions of the Act of February 27, 1865, P. L. 225, relating to railroads, later extended to coal companies: Act April 11, 1866, P. L. 99. Their duly recorded commissions had been issued by the governor, oaths of office, as required by the statutes, had been administered, and they thereby became possessed with the right to exercise all the functions of municipal policemen. Their powers are confined to acts of criminal character, and the arrest in the present case was based on a charge of that nature. Both officers were proceeding within the scope of their statutory authority, and there is no proof that they were directed by the defendant to act in any other capacity.

What was said by Judge RICE, in Finfrock v. Northern Central Ry. Co., 58 Pa. Superior Ct. 52, on page 58, a case frequently cited, and relied on by the court below in this case, may be appropriately repeated: "There is much force in the contention that the relation of master and servant exists between such person [an appointed public officer] and the railroad company, arising from the fact that he is in reality selected by the company, is

compensated exclusively by the company in accordance with such agreement as may be entered into between them, and his authority to act as a policeman may be terminated by the company at its pleasure. While the act [extended to coal and iron officers in 1866] does not expressly declare that he shall be subject to the orders of the company or its officers, yet it may be said with much plausibility that the moral effect of the statutory provisions to which we have just alluded is to make him feel, at least, that he is subject to the direction and control of the company in the exercise of the powers conferred upon him, and is responsible to it. But, on the other hand, it is to be observed (1) that he derives his appointment directly from the governor and holds a commission from him; (2) that, while the governor may not appoint others, he is not required to appoint and commission the persons designated by the company unless he deems it proper to do so, and, in determining that question, may consider not only the number but the fitness of the persons he will appoint; (3) that, before entering upon the 'duties of his office,' the appointee is required to take and subscribe an oath to support the Constitution of the Commonwealth and perform the duties of his office with fidelity; (4) that the duties of his office and his powers are defined by the act, and do not expressly or necessarily include obedience to the orders of the railroad company. These considerations lead strongly to the conclusion that the policeman presumptively acts as a public officer, and not as the servant or employee of the railroad company."

Those appointed under the statutes referred to are not ordinarily to be considered as acting on behalf of the defendant company in making an arrest for disorderly conduct and detaining the one apprehended, but as police officers: Ruffner v. Jamison Coal & Coke Co., 247 Pa. 34; Bunting v. P. R. R. Co., 284 Pa. 117. The conduct complained of was criminal in its nature, committed in their presence on the public highway, and to restrain

its continuance they could act without warrant. It was their duty, within a reasonable time thereafter, to make formal information, and have the charge passed on by a duly accredited magistrate. In the present case, they took Fagan to the office of the head of the coal and iron police, immediately communicated with counsel and asked that the case be disposed of at once by hearing. It was with plaintiff's consent, and that of his attorney, that the trial, based on a sworn complaint, was delayed until the evening of the same day. Even though the arrest had been made by such officers merely on suspicion, which was subsequently found to be unjustified, resulting in a discharge for lack of evidence, the company would not be liable: Naugle v. P. R. R. Co., 83 Pa. Superior Ct. 528. The mere fact that it may have paid the compensation of policemen, who, in the performance of their public duties, incidentally furnish it protection, does not change the situation: Ruffner v. Jamison Coal & Coke Co., supra.

Certain exceptions to the general rule of nonliability are recognized. In Finfrock v. Northern Central Ry. Co., supra, relied on by the appellee, where, under the circumstances there recited, a verdict against the defendant was sustained, it was pointed out that the presumption was that the officer was acting in a public capacity, though rebuttable by affirmative proof that he was at the time engaged in some special service for the company, such as guarding its property or enforcing obedience to one of its rules and regulations, and the same principle has been upheld in other cases: Keidel v. B. & O. R. R. Co., 281 Pa. 289; Tufshinsky v. P., C., C., & St. L. Ry. Co., 61 Pa. Superior Ct. 121; Kiley v. Dilworth, 55 Pa. Superior Ct. 329. Likewise, a recovery could be had if the detention complained of had been expressly ordered or directed by one having authority to act for the defendant, and it was illegal. In the present case, the arrest was not made to protect the property of the company, to compel obedience to any of

its rules, or made at the instigation of its authorized employees, for, under our decisions, the commissioned police are not to be considered as such. The facts fall rather within the purview of the later decision of the same court, distinguishing the one first cited: Naugle v. P. R. R. Co., supra.

Plaintiff was here charged with a criminal offense and arrested by duly authorized officers. His temporary detention, awaiting the making of a formal information before some judicial officer having jurisdiction, was solely the act of those authorized by the state. Counsel for both parties were communicated with as promptly as conditions permitted, and a time agreeable to all was fixed upon for the formal judicial hearing. This resulted in conviction, though the same was set aside, not because of the innocence of the one charged, but by reason of defects in the record prepared by the justice. Whether guilty or not, if there was probable cause for arresting the plaintiff, the act of the officer would be justified. The disorderly conduct occurred on a public highway, and there was no evidence to show that the company directed, instigated or took part in the apprehension or detention of Fagan. It was not made because of a violation of the rules of the coal company, or to protect its property, nor does it appear that any wrongful act was ratified by the defendant or one acting with authority for it. There was no evidence to overcome the presumption that the act complained of was done by the commissioned officers in their official capacity, and not as servants of the coal company, and the latter cannot for that reason be held liable. Judgment should, therefore, have been entered for the defendant notwithstanding the verdict.

The judgment is reversed and entered for defendant.