J. A33003/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TROY DEMBY, | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| Appellant | : |
| | : |
| v. | : |
| | : |
| DREXEL UNIVERSITY, DREXEL POLICE | : |
| OFFICER ROBERT ALLEN (BADGE | : |
| NO. 55), DREXEL POLICE OFFICER | : |
| LAMBERT REBSTOCK (BADGE NO. 52), | : |
| DREXEL POLICE OFFICER LOUIS | : |
| GREGG (BADGE NO. 50), DIRECTOR | : |
| OF DREXEL POLICE ED SPANGLER, | : |
| DREXEL POLICE CAPTAIN FRED | : |
| CARBONARA, DOMINIC | : |
| CECCANECCHIO DREXEL UNIVERSITY | : |
| DEPT. OF PUBLIC SAFETY, TIFFANY | : |
| AUGUSTINE, DREXEL UNIVERSITY | : |
| DEPT. OF PUBLIC SAFETY, DREXEL | : |
| POLICE DETECTIVE ROBERT LIS AND | : No. 2511 EDA 2014 |
| DREXEL POLICE SERGEANT FERNANDO | : |
| SANTIAGO | : |

Appeal from the Order Entered July 24, 2014,
in the Court of Common Pleas of Philadelphia County
Civil Division, at No. December Term, 2013 No. 3515

BEFORE: FORD ELLIOTT, P.J.E., STABILE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 16, 2016**

Troy Demby appeals from the order of July 24, 2014, sustaining defendants/appellees' preliminary objections in the nature of a demurrer and dismissing his complaint with prejudice. We affirm in part, reverse in part, and remand for further proceedings.

---

* Retired Senior Judge assigned to the Superior Court.

In his complaint filed February 11, 2014, appellant described the parties to this action as follows:

2. Plaintiff, Troy Demby, is an adult male who is and was at all material times a resident of Philadelphia, Pennsylvania.

3. Defendant Drexel University (hereinafter "Drexel") is, upon information and belief, a private non-profit domestic educational corporation with a registered office at 3141 Chestnut Street in Philadelphia, Pennsylvania.

4. Defendant Tiffany Augustine was at all relevant times a civilian employee of Drexel charged with operating a close circuit television camera and was required to follow Drexel's Public Safety Policy on CCTV.

5. Defendant Drexel Police Officers Robert Allen (Badge No. 55), Lambert Rebstock (Badge No. 52), and Louis Gregg (Badge No. 50) were at all relevant times sworn municipal police officers with law enforcement authority at Drexel's three campuses in Philadelphia: University City, Center City (Hahnemann Campus), and Queen Lane Medical Campus.

6. Defendant Drexel police Sergeant Fernando Santiago was at all relevant times a municipal police officer with law enforcement authority at Drexel's three campuses in Philadelphia: University City, Center City (Hahnemann Campus), and Queen Lane Medical Campus. Sergeant Santiago had supervisory authority and responsibility over Drexel's Police Officers, including Allen, Rebstock, and Gregg.

7. Defendant Director of Police Ed Spangler was at all relevant times a municipal police officer with law enforcement authority, command, and oversight of all policing activity at Drexel's three campuses in Philadelphia: University

City, Center City (Hahnemann Campus), and Queen Lane Medical Campus.

8. Defendant Police Captain Fred Carbonara was at all relevant times a municipal police officer with law enforcement authority, command, and oversight of all policing activity at Drexel's three campuses in Philadelphia: University City, Center City (Hahnemann Campus), and Queen Lane Medical Campus.

9. Defendant Vice President of Public Safety, Dom[i]nic Ceccanecchio, was at all relevant times a civilian employee of Drexel responsible for managing all Drexel security and safety related programs, services, agents, and employees.

10. Defendant Detective Robert Lis was at all relevant times the Assistant Director of investigation for Drexel. His responsibilities included internal affairs, special investigations, evidence collection, and case file management.

11. At all times relevant, all named individual defendants were acting within the course and scope of their employment and authority as Drexel employees and/or police officers.

12. At all times relevant, Defendant Drexel owned, operated, managed, employed, directed, and controlled the agents, including the named individual defendants, identified herein.

Plaintiff's Complaint, 2/11/14 at ¶¶ 2-12.

In sustaining appellees' preliminary objections, the trial court relied on

the facts as alleged in appellant's complaint:

This Court considered as true the following facts which were alleged by the Plaintiff in his Complaint, as well as all inferences reasonably deducible therefrom:

13. On or about December 30, 2011, one Walter Johnson was walking with **_Earl Demby_** on Drexel University's main campus.[Footnote 1]

> [Footnote 1] Emphasis added as the Plaintiff in this case is **_Troy Demby_**.

14. The two African American men were doing nothing illegal. Still, Defendant Augustine[Footnote 2] began following them utilizing various CCTV cameras, and observed the men try to open several doors on the campus, all of which are open to the public.

> [Footnote 2] A Drexel employee.

15. None of the preserved video shows the men possessing any screwdrivers, nor do they show either of the men attempting to pry or force open the doors.

16. Defendant Augustine ignored the lack of any illegal activity and directed Drexel Police attention to the two black males near the Bossone building on Drexel's campus.

17. In response, at least two Drexel Police vehicles responded by racing to the intersection of 31st and Ludlow to capture the men, who were simply walking at that point near the boundary of Drexel's campus.

18. Defendants Gregg and Rebstock exited the first vehicle. Gregg[] took aggressive action toward Mr. Johnson. Mr. Johnson fled, with Rebstock in pursuit.

19. Defendant Gregg redirected his aggressive actions toward Earl Demby, who raised his hands in the air.

20. Defendant Allen drove a second Drexel SUV toward Mr. Johnson at a high rate of speed. He then made a wide turn, accelerated, and crashed his vehicle directly into Mr. Johnson, pinning his body against a concrete wall. Defendant Allen drove the SUV into Mr. Johnson with such force that its hood buckled.

21. Defendant Allen opened the vehicle's driver door and spoke briefly with Defendant Rebstock.

22. About 15 seconds later, Allen closed the door and backed the vehicle up. Mr. Johnson crumbled to the ground due to the serious injuries he sustained.

23. Defendant Augustine saw all of the aforementioned events occur.

24. Defendant Santiago arrived shortly thereafter and was supervisor on the scene. He took actions to avoid divisions and/or officers from the Philadelphia Police Department from being sent to the scene. He succeeded.

25. Mr. Johnson was transported to the Hospital of the University of Pennsylvania.

26. ***Earl Demby was released at the scene.*** [Emphasis added.]

27. ***Earl Demby and plaintiff, Troy Demby, are brothers.*** [Emphasis added.]

***28. Troy Demby was not at the scene. He was at work and/or commuting home from work during the aforementioned incident.*** [Emphasis added.]

29. Police on the scene, including some and/or all of the Defendant Police Officers, completed false paperwork, including some that was contradictory of other paperwork. For example, some paperwork indicated that Earl Demby -- incorrectly identified in police paperwork as plaintiff, Troy Demby -- was released from the scene because he had proper identification and was released for further investigation according to one report; another report indicates that Troy Demby was mistakenly released at the scene.

30. Additional police paperwork completed by the individual defendant officers falsely indicated that Troy Demby and Mr. Johnson dropped screwdrivers that they were purportedly using to attempt to pry open locked doors.

31. In reliance of information -- the vast majority of which was false -- provided by Defendants Augustine, Allen, Rebstock, Santiago, and Gregg, Philadelphia Police Detective Theodore Manko, Jr. (Badge No. 961) submitted paperwork causing the Philadelphia District Attorney's Office to charge plaintiff, Troy Demby, with Attempted Burglary, Criminal Conspiracy, Attempted Criminal Trespass, Possession of an Instrument of Crime, and Criminal Mischief.

32. Mr. Johnson was arrested while being treated for his serious injuries that were

caused by Defendant Allen crashing a large police SUV into him and pinning him against a concrete building.

33. An arrest warrant was issued for Troy Demby. Mr. Demby turned himself in once he learned of the warrant.

34. Defendants Carbonara and Spangler viewed the CCTV preserved video that showed Mr. Johnson being smashed into by the police SUV driven by Defendant Allen.

35. Defendant Lis was responsible for ensuring a proper investigation of the aforementioned incident.

36. Defendants Augustine, Allen, Gregg, and Rebstock appeared for four listings of Plaintiff and Mr. Johnson's preliminary hearing scheduled on various dates in January through March, 2012. At no time did any of those defendants inform representatives of the Philadelphia District Attorney's Office that the allegations against Plaintiff and Mr. Demby in the police paperwork were false.

37. On March 28, 2012, Defendants Augustine and Gregg did testify against Plaintiff and Mr. Johnson at their preliminary hearing. Augustine offered incomplete testimony, leaving out the portion of the incident in which Allen drove his vehicle into Mr. Johnson, and Gregg offered false testimony about the incident, resulting in Plaintiff and Mr. Johnson being bound over for trial on the charges detailed ***supra***.

38. Drexel, through its agents and supervisors acting in the course and scope of their employ, including Director of Police Ed Spangler, Police Captain Fred Carbonara, Detective Lis, and Vice President of Public Safety Dom[i]nic Ceccanecchio, knew, should have known, or were recklessly indifferent to the fact that the Drexel CCTV video did not support the averments being made in the police paperwork at issue or the charges being brought by the Philadelphia District Attorney's Office.

39. Drexel, through its agents and supervisors acting in the course and scope of their employ, including Director of Police Ed Spangler, Police Captain Fred Carbonara, Detective Lis, and Visce [sic] President of Public Safety Dom[i]nic Ceccanecchio, knew, should have known, or were recklessly indifferent to the fact that Augustine and Gregg intended to offer, and did offer, the false and /or incomplete testimony against Plaintiff, Troy Demby, and Mr. Johnson at their preliminary hearing.

40. At no time did any Drexel agent or employee, including the named individual defendants, with knowledge of the actual events in the CCTV video, alert the Philadelphia District Attorney's Office concerning the true nature of the events depicted therein.

41. Drexel, through its agents and supervisors acting in the course and scope of their employ, including Director of Police Ed Spangler, Police Captain Fred Carbonara, Detective Lis, and Visce [sic] President of Public Safety Dom[i]nic Ceccanecchio, deliberately disregarded Drexel's Police Directives,

Code of Conduct, and various memoranda in carrying out their duties and responsibilities during this incident and its aftermath, including throughout the duration of plaintiff, Troy Demby and Mr. Johnson's prosecution.

42. The Philadelphia District Attorney's Office, after reviewing the evidence, including the available CCTV evidence, withdrew charges against plaintiff, Troy Demby and Mr. Johnson on October 15, 2012.

***Plaintiff's Complaint***, ¶ 13-42. [Emphasis added.]

Based upon these facts, the Plaintiff drew the legal conclusions that Defendants Augustine, Allen, Rebstock, Gregg, Spangler, Carbonara, Ceccanecchio, Santiago, and Lis engaged in (Count 1) a conspiracy to make false statements to law enforcement, thus violating 18 Pa.C.S. § 4906. Plaintiff also alleged the torts of (Count 2) false arrest and (Count 3) false imprisonment as committed by Augustine, Allen, Rebstock, Gregg, and Santiago; (Count 4) malicious prosecution and (Count 5) intentional infliction of emotional distress as committed by Augustine, Allen, Rebstock, Gregg, Spangler, Carbonara, Ceccanecchio, Santiago, and Lis. Plaintiff also alleged (Count 6) negligent infliction of emotional distress against all defendants, including Drexel University; (Count 7) negligence and (Count 8) vicarious liability on the part of Drexel as the employer.

Trial court opinion, 1/21/15 at 2-6.

On July 24, 2014, the trial court sustained appellees' preliminary objections and dismissed the complaint with prejudice. This timely appeal followed on August 19, 2014. Appellant complied with Pa.R.A.P. 1925(b), and the trial court filed an opinion.

Appellant brings the following issues for this court's consideration on appeal:

> I. Whether the lower court utilized the incorrect standard of review by accepting facts outside the complaint that were proffered by Appellees, and drawing inferences in Appellees['] favor?
>
> II. Whether the lower court erred by not applying the doctrine of transferred intent?
>
> III. Whether the lower court erred by determining that Appellant had not pleaded sufficient facts that would allow recovery under any circumstance for the causes of action contained [in] the complaint?

Appellant's brief at 5. We will address appellant's issues together, examining each count of the complaint to determine whether appellant pled facts sufficient to survive demurrer.

> Our scope of review is plenary when reviewing a trial court's order sustaining preliminary objections in the nature of a demurrer. ***See Glassmere Fuel Serv., Inc. v. Clear***, 900 A.2d 398, 401 (Pa.Super. 2006). "In order to determine whether the trial court properly sustained Appellee's preliminary objections, this court must consider as true all of the well-pleaded material facts set forth in the complaint and all reasonable inferences that may be drawn from those facts." ***Id.*** at 402. In conducting appellate review, preliminary objections may be sustained by the trial court only if the case is free and clear of doubt. ***See Knight v. Northwest Sav. Bank***, 747 A.2d 384, 386 (Pa.Super. 2000).

***Wheeler v. Nationwide Mut. Fire Ins. Co.***, 905 A.2d 504, 505 (Pa.Super. 2006), ***appeal denied***, 916 A.2d 1103 (Pa. 2007).

First, we address appellant's claim for civil conspiracy. Appellant alleged that appellees conspired to conceal wrongdoing, including making false statements.

> In order for a claim of civil conspiracy to proceed, a plaintiff must "allege the existence of all elements necessary to such a cause of action." ***Rutherfoord v. Presbyterian-University Hospital***, 417 Pa.Super. 316, 612 A.2d 500, 508 (1992) (citation omitted).
>
> > The Pennsylvania Supreme Court set forth the elements of civil conspiracy in ***Thompson Coal Co. v. Pike Coal Co.***, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979): "It must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Proof of malice, ***i.e.***, an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification. [***Id.***]. Furthermore, a conspiracy is not actionable until "some overt act is done in pursuance of the common purpose or design . . . and actual legal damage results."
>
> ***Id.*** (quotation omitted). In addition, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." ***Id.***

***Grose v. Proctor & Gamble Paper Products***, 866 A.2d 437, 440-441 (Pa.Super. 2005), ***appeal denied***, 889 A.2d 89 (Pa. 2005). As agents of Drexel University, appellees cannot "conspire" among themselves. ***Id.***

- 11 -

Therefore, the trial court properly dismissed appellant's count of civil conspiracy for failure to state a cause of action.

We now turn to Counts 2 and 3 of the complaint, false arrest and false imprisonment. Appellant argues that although appellees did not physically arrest him, they created the paperwork containing false accusations on which the arrest warrant was based.

> False arrest and false imprisonment are nearly identical claims, and courts often analyze the claims together. False arrest is grounded in the Fourth Amendment's guarantee against unreasonable seizures, where false imprisonment is based upon the Fourth Amendment's prohibition against deprivation of liberty without due process of law. Claims of both false arrest and false imprisonment are predicated on an arrest made without probable cause in violation of the Fourth Amendment.

*Wilson v. Dewees*, 977 F.Supp.2d 449, 455 (E.D.Pa. 2013) (quotation marks and citations omitted).

> The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention. An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not. *Fagan v. Pittsburgh Terminal Coal Corporation*, 299 Pa. 109, 149 A. 159 (1930). Probable cause exists when "the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez*, 526 Pa. 268, 273, 585 A.2d 988, 990 (1991). (Citation omitted.)

*Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).

Instantly, it is undisputed that appellant was not at the scene. Appellees never had any contact with appellant. An arrest warrant was issued by the Philadelphia District Attorney's Office, not by appellees. Based upon appellees' "investigation," the District Attorney's Office determined that probable cause existed to file criminal charges and an arrest warrant was issued for appellant, who subsequently turned himself in to Philadelphia police.

The trial court contends that appellant's false arrest/imprisonment claims fail because the District Attorney's Office determined that there was probable cause to bring criminal charges based on Drexel's investigation. (Trial court opinion, 1/21/15 at 9.) The issue is not whether the Philadelphia authorities had probable cause to file criminal charges, but rather whether the information supplied by Drexel authorities was fraudulent.

Accepting the factual allegations in the complaint to be true, as is the standard of review, Earl Demby and Mr. Johnson were simply walking around the university campus, which was open to the public. They had attempted to gain entrance to several buildings on campus, but there was no evidence whatsoever of any criminal activity. After the two men were detained, and Mr. Johnson was crushed by the police SUV, it is alleged that appellees manufactured evidence in an attempt to justify their actions. Appellees accused "Troy" Demby and Mr. Johnson of using burglary tools in an effort to break into university buildings. The CCTV video evidence belied

these accusations. In addition, according to the complaint, appellees perjured themselves at the preliminary hearing. Again, for purposes of ruling on preliminary objections, all these allegations are taken as true.

The Philadelphia Police Department and District Attorney's Office reasonably relied on appellees' information when they issued the arrest warrant for appellant. Appellees, as law enforcement officers, surely knew when they created a false record that their actions would lead to an illegal arrest. Therefore, if proven, they can be held liable for appellant's false arrest/imprisonment. *See Patton v. Vucinic*, 167 A. 450, 452 (Pa.Super. 1933) (where the plaintiff alleged that the defendant falsely and maliciously accused him of stealing her stepfather's car and directed his arrest by police, the evidence was sufficient to establish a *prima facie* case of unlawful arrest and false imprisonment).

Throughout its Rule 1925 opinion, the trial court reiterates that but for the fact that Earl Demby falsely identified himself as appellant, appellant never would have been arrested. This statement is true as far as it goes, but it ignores the fact that "but for" appellees' own alleged illegal and outrageous conduct, in dereliction of their sworn duty as law enforcement officers, Earl Demby never would have been detained in the first place, and Troy Demby never would have been arrested. Ultimately, appellees' alleged false allegations are what prompted the police to arrest appellant. We determine that the trial court erred in dismissing Counts 2 and 3 of

appellant's complaint. Under these particularly unique circumstances, the facts alleged by appellant were legally sufficient to make out claims for false arrest/imprisonment against appellees.

Count 4 alleged malicious prosecution. "In order to establish a claim for malicious prosecution a party must establish that the defendants instituted proceedings against the plaintiff: 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." *Bradley v. General Acc. Ins. Co.*, 778 A.2d 707, 710 (Pa.Super. 2001), citing *McKibben v. Schmotzer*, 700 A.2d 484, 492 (Pa.Super. 1997).

> A private person is subject to liability for malicious prosecution "'if (a) he initiates or procures the [institution of criminal] proceedings without probable cause and primarily for a purpose other than that of bringing the offender to justice, and (b) the proceedings have terminated in favor of the accused.'" *Hess v. County of Lancaster*, 100 Pa.Cmwlth. 316, 514 A.2d 681, 683 (1986) [quoting Restatement (Second) of Torts § 653 (1977)]. "[C]riminal proceedings are initiated 'by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused.'" *Id.* (quoting Section 653 cmt. c). The *Hess* court quoted with approval the following portion of Section 653, comment g:
>
>> [G]iving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. . . . ***If, however, the information is known***

> ***by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information.*** In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

> ***Id.*** 514 A.2d at 683.

***Tomaskevitch v. Specialty Records Corp.***, 717 A.2d 30, 33 (Pa.Cmwlth. 1998), ***appeal denied***, 740 A.2d 236 (Pa. 1999) (emphasis added).[1]

The first and third elements of a malicious prosecution claim are easily satisfied, ***i.e.***, lack of probable cause and that the criminal proceedings terminated in the plaintiff's favor. As stated above, there was no probable cause to prosecute appellant and eventually, after the District Attorney reviewed the CCTV footage, the charges were dropped.

Again, appellees and the trial court focus on the fact that the charges were not actually filed by them, but by the Philadelphia Police

---

[1] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." ***Petow v. Warehime***, 996 A.2d 1083, 1088-1089 n.1 (Pa.Super. 2010), ***appeal denied***, 12 A.3d 371 (Pa. 2010) (citations omitted).

Department/District Attorney's Office. However, as the language quoted above makes clear, a third party can be sued for malicious prosecution where he procures the institution of criminal proceedings without probable cause and primarily for purposes other than bringing the offender to justice. Essentially, it comes down to bad faith, which is the case here. As pleaded in the complaint, appellees knew that the allegations were false and that the Philadelphia municipal police authorities were relying on these false allegations to charge appellant. As alleged, appellees knew that there was no evidence that Earl Demby or Mr. Johnson was trying to pry open doors with screwdrivers. The paperwork was falsified and their testimony at the preliminary hearing would therefore appear to be suspect. Furthermore, their alleged purpose in doing so was to cover up their own criminal misconduct in illegally detaining Earl Demby and running over Mr. Johnson with an SUV.

The trial court remarks, "It was [appellant's] brother, Earl Demby, who set this whole series of events into motion by falsely claiming to police that he was the Plaintiff, Troy Demby." (Trial court opinion, 1/21/15 at 14.) According to the trial court, this case boils down to a simple case of mistaken identity. We could not disagree more. In fact, it was the Drexel University police officers who "set this whole series of events into motion" when they responded to initial reports of two black men walking around campus by aggressively pursuing them and pinning one of them against a

wall with their police vehicle. Appellant alleges that they then attempted to justify their behavior in the eyes of the public by falsifying documents. The fact that their false allegations name Troy instead of Earl is of no moment. Appellant pled sufficient facts in support of his claim for malicious prosecution to survive demurrer.

Count 5 was for intentional infliction of emotional distress.

> Liability for the tort of intentional infliction of emotional distress arises "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous.'"

**Baselice v. Franciscan Friars Assumption BVM Province, Inc.**, 879 A.2d 270, 281 (Pa.Super. 2005), **appeal denied**, 891 A.2d 729 (Pa. 2005), quoting **Strickland v. University of Scranton**, 700 A.2d 979, 987 (Pa.Super. 1997).[2]

---

[2] The tort of outrageous conduct causing severe emotional distress is outlined in § 46 of the Restatement (Second) of Torts as follows:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. ***See e.g.***, . . . ***Banyas v. Lower Bucks Hospital***, 293 Pa.Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); ***Chuy v. Philadelphia Eagles Football Club***, 595 F.2d 1265 (3d.Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

***Hoy v. Angelone***, 720 A.2d 745, 754 (Pa. 1998) (additional citation omitted).

Certainly, appellant's allegation that appellees knowingly made false statements and presented false testimony that not only led to appellant's false arrest/imprisonment, but was done by the Drexel police in an effort to shield themselves from potential civil and criminal liability does rise to the level of the outrageous conduct described in ***Hoy***. Most of appellees were sworn police officers with law enforcement authority. They allegedly falsified

---

> intentionally or recklessly causes severe emotional distress.
>
> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
>
> (b) to any other person who is present at the time, if such distress results in bodily harm.

records and lied under oath to conceal their own criminal wrongdoing. Their behavior, if true, was beyond the bounds of all decency.

Regrettably, however, appellant is unable to cite any authority for the proposition that an intentional infliction claim can be sustained in this case, where he was not the intended target of appellees' false accusations. Appellant was not present at the scene of Earl Demby's arrest and had no contact with any of the individual defendants. We are constrained to conclude that demurrer was properly granted as to appellant's intentional infliction of emotional distress claim.[3]

We briefly address appellant's argument concerning the doctrine of transferred intent, which ordinarily applies in criminal cases but can be invoked in intentional torts as well. 18 Pa.C.S.A. § 303; **Germantown Ins. Co. v. Martin**, 595 A.2d 1172, 1175 (Pa.Super. 1991), **appeal denied**, 612 A.2d 985 (Pa. 1992) ("Intent may be transferred from an intended victim to another."), citing **Nationwide Mut. Ins. Co. v. Hassinger**, 473 A.2d 171 (Pa.Super. 1984). According to appellant, even though he was not at the scene and had no direct contact with appellees, their intent to "frame" Earl Demby and Mr. Johnson can be transferred to him. (Appellant's brief at 14.) Appellant analogizes the facts to a scenario in which an individual

---

[3] Appellant has abandoned his negligent infliction of emotional distress claim, pled in Count 6 of the complaint. (Appellant's brief at 19 n.2.)

intends to physically assault a second person, but a third person is actually harmed. (***Id.*** at 15.)

There is some authority for the idea that transferred intent should apply, beyond physical-harm cases, to cases where the actor intends to cause severe emotional harm to one person, but instead of harming the intended victim, the conduct harms a different person. ***See*** Rest. (3rd) of Torts § 46, comment (i); Prosser & Keeton on Torts § 12, p. 65 (5th ed. 1984) ("There seems to be little reason to apply [transferred intent] when the plaintiff suffers physical harm, and to reject it where there is mental damage."); ***Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville***, 154 S.W.3d 22, 38-39 (Tenn. 2005) ("[W]e hold that a claim of reckless infliction of emotional distress need not be based upon conduct that was directed at a specific person or that occurred in the presence of the plaintiff."). However, Pennsylvania has retained the "directed-at" requirement of the Second Restatement, ***i.e.***, direct claims for intentional infliction of emotional distress must be based upon conduct that is directed at a specific person or performed in the presence of the plaintiff. ***See Johnson v. Caparelli***, 625 A.2d 668, 671 (Pa.Super. 1993), ***appeal denied***, 647 A.2d 511 (Pa. 1994) (holding that Section 46(1) "applies to situations in which a person suffers severe emotional distress as a result of outrageous conduct which is directed at that individual"). Because the alleged extreme and outrageous conduct of appellees was not "directed at"

appellant, and he was not present at the time the acts were committed, he cannot recover for intentional infliction of emotional distress. *Johnson*. The cases relied upon by appellant in support of application of the transferred intent doctrine, including *Martin* and *Hassinger*, involved bodily injury and are inapposite.

Finally, we address appellant's claims for negligence and vicarious liability against Drexel University. The trial court dismissed these claims on the basis that none of the conduct described in the complaint constitutes any legally cognizable tortious or wrongful conduct by Drexel's employees or agents. (Trial court opinion, 1/21/15 at 18.) Obviously, this conclusion is incorrect, since we have already found that appellant has set forth *prima facie* claims for false arrest/imprisonment and malicious prosecution.

It is well settled that an employer has the duty to exercise reasonable care in selecting, supervising, and controlling its employees. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 42 (Pa.Super. 2000) (citation omitted). *See also Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 107 (Pa.Super. 1998) ("Our reasoning that an employer may be liable directly for wrongful acts of its negligently hired employee comports with the general tort principles of negligence long recognized in this jurisdiction."), citing *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418 (Pa. 1968). Here, under Count 7, negligence, appellant alleged, *inter alia*, that Drexel failed to properly train and supervise its employees, including the defendant police

officers, resulting in harm to appellant. Appellant alleged that Drexel failed to train the defendants in the use of force and investigative techniques, including stops and pursuits. (Plaintiff's complaint, 2/11/14 ¶ 63; RR at A15.) Appellant alleged that Drexel failed to have appropriate policies and procedures in place and failed to meaningfully review its employees' actions, resulting in the wrongful prosecution of appellant. (*Id.*) Appellant has sufficiently pled negligence against Drexel to survive demurrer. The trial court erred in dismissing appellant's negligence cause of action against Drexel based on negligent training/supervision.

Similarly, with regard to vicarious liability, appellant alleged that the individual defendants acted within the course and scope of their authority with Drexel. (*Id.* at ¶ 68; RR at A16.) Appellant alleged that their actions were performed in furtherance of the public safety objectives of Drexel, and were authorized and customary as part of Drexel's campus policing and public safety programs. (*Id.* at ¶¶ 69-70; RR at A16-A17.)

> As we noted in ***Sutherland v. Monongahela Valley Hosp.***, 856 A.2d 55, 62 (Pa.Super. 2004):
>
>> Pennsylvania law with regard to the vicarious liability of an employer for the acts of its employee was well summarized in ***R.A. v. First Church of Christ***, 748 A.2d 692[, 699] (Pa.Super. 2000), as follows:
>>
>>> It is well settled that an employer is held vicariously liable for the negligent acts of his employee which cause

- 23 -

> injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment.

***Scampone v. Grane Healthcare Co.***, 11 A.3d 967, 990 (Pa.Super. 2010), ***affirmed in part on other grounds***, 57 A.3d 582 (Pa. 2012).

> The conduct of an employee is considered within the scope of employment for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

***R.A.***, 748 A.2d at 699 (internal quotation marks omitted).

Instantly, appellant pleaded that the defendants, agents and employees of Drexel, committed torts against him in the course and scope of their employment. We determine that appellant stated sufficient facts to state a claim for vicarious liability against Drexel for the actions of its employees. Therefore, the trial court erred in dismissing Count 8, vicarious liability.

For these reasons, we affirm in part, and reverse in part. The order dismissing Count 1 (civil conspiracy), Count 5 (intentional infliction of emotional distress), and Count 6 (negligent infliction of emotional distress) is affirmed; that part of the order dismissing Count 2 (false arrest), Count 3

(false imprisonment), Count 4 (malicious prosecution), Count 7 (negligence -- Drexel), and Count 8 (vicarious liability -- Drexel), is reversed.

Order affirmed in part, and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2016